# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 1:14-cr-00070 |
| | : | |
| v. | : | |
| | : | (Judge Kane) |
| MARC HERNANDEZ, et al., | : | |
| Defendants | : | |

## MEMORANDUM

Before the Court is Defendant Marc Hernandez's motion to suppress evidence obtained during searches of three locations and two motor vehicles. (Doc. No. 426.) The Court scheduled a hearing on the motion on August 28, 2015. No evidence or testimony was presented. The motion has been briefed and is ripe for disposition. For the reasons that follow, the Court will deny Defendant's motion.

**I.   BACKGROUND**

With this motion, Defendant Marc Hernandez seeks to suppress physical evidence recovered during searches of 206 Coventry at Waterford, 967 E. King Street, and Apartment K-2 at 3400 Eastern Boulevard in York, Pennsylvania. (Doc. No. 467.) In addition, Defendant seeks to suppress physical evidence obtained during the search of a 2014 Chevrolet Impala, as well as the search of a 2001 Chevrolet Tahoe that occurred in 2010. (Id.)

On March 19, 2014, a federal grand jury returned an indictment charging Defendant and co-defendants with conspiracy to distribute controlled substances.[1] (Doc. No. 1.) The next day, March 20, 2014, Magistrate Judge Carlson issued a warrant that authorized four of the searches in question. (See Doc. No. 507-1 at 4.) The warrant application bears the signature of Scott

---

[1] A second superseding indictment issued on September 17, 2014. (Doc. No. 78.)

1

Endy, a Special Agent with the Department of Justice Bureau of Alcohol, Tobacco, Firearms and Explosives. (Doc. No. 507-1 at 5.) Agent Endy attached a sworn affidavit to the warrant application detailing his own credentials and detailing information from the ongoing investigation into Defendant and his co-defendants for firearms and controlled substances crimes. (Doc. No. 507-1 at 6-33.) The affidavit, which spans 27 pages and 99 numbered paragraphs, purports to establish the bases for probable cause to search the three physical locations in question as well as the 2014 Chevrolet Impala. (Id.) The 2010 search of the Chevrolet Tahoe involved state law enforcement, and is discussed separately below.

### A.     206 Coventry at Waterford

According to the Government, the basis for probable cause for searching the apartment at 206 Coventry at Waterford (an apartment complex in York County, Pennsylvania) may be found in numbered paragraphs 42, 45, 46, 67, 69, 70, 72, 73, 77, 79, 85, and 92 of Agent Endy's affidavit, while a summary of the basis for probable cause to search this address appears in paragraph 9. (Doc. No. 507 at 30.) These numbered paragraphs contain information that the Government believes ties the location to the alleged conspiracy. For example, paragraph 42 contains information gleaned from an interview of "Confidential Informant #20," who indicated that a co-defendant "and Marc HERNANDEZ have a 'stash house' somewhere in Coventry at Waterford Apartments and at this location they are storing firearms and cocaine." (Doc. No. 507-1 at 17 ¶ 42.) That informant also stated that one of Defendant's girlfriends, Lizarah Matthews, had applied for work at York County Prison. (Id.) York City Detective Scott Nadzom verified that report with a deputy warden, and learned that Ms. Matthews listed 206 Coventry at Waterford as her address on her employment application. (Id. ¶ 43.) Detective

Nadzom also vouched for the reliability of the confidential informant. (Id.)

In addition, on January 29, 2014, officers observed another of Defendant's alleged girlfriends, Sunita Basil, arriving at 206 Coventry at Waterford and leaving with Defendant, after which time they traveled "to various locations in the City of York." (Id. at 25 ¶ 72.) The next day, after observing Defendant making "momentary stops" around the south side of the City of York, which officers believed to be indicative of drug activity, Defendant returned to 206 Coventry at Waterford and entered with keys that he possessed. (Id. ¶ 73.) On February 5, 2014, Defendant was observed opening the door to the apartment from the inside to allow Ms. Basil, who had just arrived on the premises, to enter the apartment. (Id. 26 ¶ 75.) Other paragraphs in the affidavit describe other instances where Defendant, sometimes with his co-defendants – whose alleged drug and gang activities are detailed elsewhere in the affidavit – entered and left the apartment at 206 Coventry at Waterford. (E.g., id. at 507-1 at 27 ¶ 79.) On February 26, 2014, Agent Endy observed Defendant and a co-defendant at the apartment, and the next day, Agent Endy observed an unknown Hispanic male enter the residence and exit two minutes later. (Id. at 29 ¶ 85.) One of the witnessing police officers "stated that based on his experience and knowledge of the case this behavior was consistent with a drug transaction." (Id.)

### B. 967 East King Street

According to the Government, the basis for probable cause for searching the residence at 967 East King Street in York, Pennsylvania is described in numbered paragraphs 37, 47, 62, 68, 72, 75, and 77 of Agent Endy's affidavit, while a summary of the basis of probable cause to search this address appears in paragraph 10. (Doc. No. 507 at 30.) Paragraph 37 of Agent

Endy's affidavit identifies 967 East King Street in York, Pennsylvania as Sunita Basil's residence based on the report of confidential informant 19. (Doc. No. 507-1 at 16 ¶ 37.) Confidential informant 19 also reported that on December 11, 2013, Defendant was staying with Ms. Basil at her residence. (Id. at 23 ¶ 62.) Other informants described seeing Defendant and his co-defendants inside or around the address. (E.g., id. at 18 ¶ 47.) Vehicle tracking and surveillance indicated that the residence was a frequent stop for Defendant during the times he was under direct surveillance, along with the other locations from the warrant application. (Id. at 9 ¶ 10.) In addition, on March 8, 2014, York City Police responded to a domestic assault incident at the address reported by Ms. Basil who, while uncooperative, did state that Defendant had fled the residence in her car. (Id.)

### C. 3400 Eastern Boulevard, Apartment K-2

According to the Government, the basis for probable cause for searching apartment K-2 at 3400 Eastern Boulevard in York, Pennsylvania is described in numbered paragraphs 68 and 77 of Agent Endy's affidavit, while a summary of the basis of probable cause to search this address appears in paragraph 11. (Doc. No. 507 at 30.) According to the affidavit, Danika Washington, yet another of Defendant's alleged girlfriends, resided at this address. (Id. at 9 ¶ 11.) According to automobile tracking and physical surveillance, Defendant traveled to and remained at this residence with some frequency. (Id.) "Database queries established that Washington was residing at [the residence], and based on information received from the United States Postal Service, Danika Washington and Marc Hernandez [were] receiving mail at this location." (Id.)

### D. 2014 Chevrolet Impala

According to the Government, the basis for probable cause for searching the 2014

4

Chevrolet Impala is described in numbered paragraphs 20, 21, 31, 37, 55, 56, 59, 65, 66, 67, 70, 74, 75, 76, 77, and 78 of Agent Endy's affidavit. (Doc. No. 507 at 30.) In addition, in January of 2014, a magistrate found probable cause to install a tracking device on this vehicle, although the application for that warrant has not been presented to the Court. The Endy Affidavit is replete with evidence gleaned from confidential informants, from GPS tracking, from physical surveillance, and from traffic stops, that Defendant frequently operated the vehicle in question, dubbed "Target Vehicle #1" by investigators. (See e.g., id. ¶¶ 21, 31, 55.) For example, paragraph 55 details a traffic stop conducted by Hellam Township police on August 10, 2013. (Id. at 20-21 ¶ 55.) Defendant was driving the Chevrolet Impala, while Danika Washington and a third individual were passengers. (Id.) Defendant was arrested for summary offenses, while the third individual was arrested for an outstanding New York robbery warrant. (Id.) A search incident to Defendant's arrest revealed that he had more than $1,000 in cash on his person. (Id.) A records check revealed that the car was registered to Defendant's mother, Migdalia Jiminez, who upon being contacted, told police that co-defendant Douglas Kelly had permission to operate the vehicle. (Id.) During a subsequent search, police recovered two rolls of currency, primarily in rolls of twenty dollar bills, totaling $2,001, and a drug detection canine alerted police to traces of controlled substances, though no controlled substances were ultimately found in the car. (Id.) However, the currency recovered from the car was "Ion Scan tested by the National Guard," and both the currency on Defendant's person and the currency in the car "tested positive for the presence of cocaine." (Id.)

Upon consideration of Agent Endy's affidavit, Magistrate Judge Carlson issued a search warrant for the residences and the Chevrolet Impala on March 20, 2014, and law enforcement

conducted the searches beginning on March 21, 2014. (Doc. No. 432 at 2.) Neither party details what exactly those searches uncovered, though Defendant now seeks to have all evidence recovered during those searches suppressed. (See Doc. No. 467.)

### E. 2010 search of the Chevrolet Tahoe

In addition, years earlier on February 21-22, 2010, York City Police officers impounded and searched a 2001 Chevrolet Tahoe belonging to a York resident named Tanya Rubio. (Doc. No. 507-1 at 39.) The police were acting on information from a known "multi-drug user" informant whose tips had been reliable in the past. (Id.) When they arrived in the parking lot, police verified that the vehicle fit the description given to them by the informant, including its make, model, location, and registration, and then towed the unoccupied vehicle away from the area of 200 West Cottage Place in York, Pennsylvania to an impound lot. (Id.) The next morning, while the car was impounded, the police employed a drug sniffing canine, and the animal indicated that drugs were likely to be found in the vehicle. (Id.) Thereafter, Detective Scott Nadzom, using the information from the informant and from the canine walk-around, applied for and received a search warrant for the vehicle. (See id.) Defendant seeks to have the physical evidence obtained from this search suppressed as well. (Doc. No. 426.)

At the brief August 28, 2015, hearing, neither party proffered evidence or presented arguments, instead asking the Court to rule on the motion as filed and briefed.

## II. LEGAL STANDARD

### A. Standards governing motions to suppress

A criminal defendant brings motions to suppress evidence pursuant to Federal Rule of Criminal Procedure12(b)(3)(C), seeking to show that evidence against him or her was

6

unconstitutionally obtained, so that the so-called "exclusionary rule" operates to bar the evidence's admission against that defendant at trial.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures, and consequently, authorities are typically required to obtain a warrant before conducting a search. United States v. Herrold, 962 F.2d 1131, 1137 (3d Cir. 1992). When challenging an allegedly unlawful search or seizure, a challenger must first show a "reasonable expectation of privacy," in the place or thing searched, thereby establishing standing to challenge the search or the seizure. Rakas v. Illinois, 439 U.S. 128, 132 n.1 (1978).

When a search warrant authorized the search, the proponent of the motion to suppress bears the burden of establishing that his or her Fourth Amendment rights were violated due to defects in the warrant application, the warrant itself, or the execution of the warrant. See United States v. Correa, 653 F.3d 187, 190 (3d Cir. 2011) (citing Rakas, 439 U.S. at 130 n.1); see also United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995). The challenger must make this showing by a preponderance of the evidence. United States v. Matlock, 415 U.S. 164, 178 n.14 (1974).

Where a search or seizure occurred in the absence of a warrant, the government bears the burden of showing that the search or seizure fit within one of the established exceptions to the general warrant requirement or that a warrant was otherwise not required. Herrold, 962 F.2d at 1137. At a hearing on a motion to suppress, "the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." United States v. Richardson, 501 F. Supp. 2d 724, 734 (W.D. Pa. 2007) (citations omitted).

B.  **Search warrants**

Search warrants must be supported by probable cause. Probable cause for the issuance of a warrant is found where, under the totality of the circumstances, "there is a fair probability that . . . evidence of a crime will be found in a particular place. Illinois v. Gates, 462 U.S 213, 238 (1983). "[P]robable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide the fruits of his crime." United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (internal citations and quotations omitted). Upon a court challenge to a probable cause determination, courts apply a deferential standard of review. United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents, 307 F.3d 137, 146 (3d Cir. 2002). This means that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Id. at 147 (quoting United States v. Jones, 994 F.2d 1051, 1054 (3d Cir. 1993)). When a court is considering a motion to suppress, the question is not whether probable cause actually existed when a warrant was issued, but instead whether the issuing magistrate possessed "a substantial basis for finding probable cause." Id. (internal quotations omitted).

C.  **The good faith exception**

Where a warrant is defective or lacks probable cause, evidence from the search will still not be suppressed when the officers that executed the search warrant acted in "objectively reasonable reliance" on the lawfulness of the warrant. United States v. Leon, 468 U.S. 897, 925 (1984). This exception to the exclusionary rule applies unless a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. United

States v. Loy, 191 F.3d 360, 367 (3d Cir. 1999). Courts have identified four situations where reliance on a signed search warrant would not be "in good faith:" (1) when "the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth;" (2) "when the issuing magistrate wholly abandons [his or her] judicial role;" (3) "when the affidavit in support of the warrant is so lacking in the indicia of probable cause as to render official belief in its existence unreasonable;" and (4) "when the warrant is so facially deficient that the executing officer could not reasonably believe it was valid." Leon, 468 U.S. at 922-23. In those circumstances, a reasonable officer should not conduct a search, even where a facially valid search warrant authorizes one, and evidence uncovered in such a search will be suppressed. See id.

D. **Exceptions to the warrant requirement**

There are a number of situations, however, where a warrant need not be obtained prior to conducting a search or effecting a seizure. "Exceptions to the search warrant requirement include searches incident to arrest, protective sweeps, searches under exigent circumstances, discovery of items based on plain perception, the automobile exception, searches for the purpose of administrative and special needs, and the 'stop and frisk' doctrine." Fed. Prac. & Proc. Crim. § 675 (4th ed.) ("Wright & Miller"). Of these, the automobile exception has the greatest import to the present motion.

"Generally, less stringent warrant requirements have been applied to vehicles." Cardwell v. Lewis, 417 U.S. 583, 589-90 (1974). It has long been established that to search a motor vehicle, all that is required is probable cause. Carroll v. United States, 267 U.S. 132, 149 (1925) (holding that for automobile searches, "the true rule is that if the search and seizure without a

9

warrant are made upon probable cause . . . the search and seizure are valid."). This is so because motor vehicles are inherently mobile, and because the search and/or seizure of an automobile is considered a far less onerous intrusion than the search or seizure of the Fourth Amendment's principal province, the home. See United States v. Navas, 597 F.3d 492, 497 (2d Cir. 2010).

## III. DISCUSSION

For ease of discussion, the Court first considers Defendant's challenge to the four searches authorized by the March 20, 2014, warrant issued by Magistrate Judge Carlson upon the affidavit of Agent Endy. The Court then turns to the 2010 search of Tanya Rubio's Chevrolet Tahoe by York City Police.

### A. Searches conducted pursuant to March 20, 2014 warrants

As detailed above, Defendant challenges the searches of: an apartment at 206 Coventry at Waterford; a residence at 967 East King Street; an apartment K-2 at 3400 Eastern Boulevard; and a 2014 Chevrolet Impala registered in New York to Defendant's mother. Defendant argues that Agent Endy's warrant did not contain enough information to "permit a finding of a sufficient nexus between the locations, and car, to be searched and the crimes alleged." (Doc. No. 427 at 6.) Defendant argues that the information from the confidential informants was not sufficiently corroborated to be reliable, and that the affidavit and hence the warrant were based on stale information. (Id. at 7.) The Government argues that, under a totality of the circumstances analysis, the affidavit provided a sufficient basis for finding probable cause, and that the information was not stale because the conspiracy is protracted and continuous. (Doc. No. 507 at 30-31.)

The Court finds that Magistrate Judge Carlson possessed a sufficient basis for finding probable cause to search each of the locations and the 2014 Impala based on Agent Endy's affidavit. As to the 206 Coventry at Waterford apartment, the affidavit details how an avowedly reliable confidential informant characterized the location as a stash house for Defendant and his co-defendants, the affidavit details how Defendant and his co-defendants visited the location frequently during what experienced officers characterized as drug transactions, and the affidavit describes how law enforcement observed Defendant at the residence. (See e.g., Doc. No. 507-1 ¶¶ 42, 43, 72, 73, 75, 79, 85.) As to the 967 East King Street residence, Agent Endy's affidavit details how it was the residence of Sunita Basil, a known affiliate of Defendant's who was frequently present during what experienced officers described as drug activities, how physical surveillance placed Defendant at this location on a number of occasions, how Defendant frequently made stops at this location during what officers characterized as drug activities, and how Defendant was involved in a domestic violence incident at this address. (See e.g., id. at 10, 37, 62, 47.) As to apartment K-2 at 3400 Eastern Boulevard, Agent Endy's affidavit represents that the postal service confirmed that Defendant and Danika Washington received mail at that address, and that physical surveillance and vehicle tracking confirmed that Defendant frequently made stops at this location during what officers characterized as drug activities. (See e.g., id. ¶¶ 11, 68, 77.) As to the Chevrolet Impala, a magistrate previously authorized tracking of the vehicle, and Agent Endy's affidavit contains numerous facts tying the car to Defendant and his known affiliates. (See e.g., id. ¶¶ 12, 55.) These supporting facts include a traffic stop made when Defendant was operating the vehicle, the vehicle's confirmed operation by Defendant's alleged co-conspirators, and physical surveillance corroborating confidential informants' reports

11

that Defendant operated the vehicle. (See e.g., id. ¶¶ 20, 31, 55, 56, 66, 67,74, 75, 76, 79.)

Defendant's argument that the factual representations cannot support the warrant due to staleness also fails. Many of the factual averments from Agent Endy's affidavit concern events within the three weeks prior to the issuance of the warrant. (E.g., Doc. No. 507-1 ¶¶ 10, 13, 47.) Moreover, the Third Circuit has recognized that "[w]here 'an activity is of a protracted and continuous nature, the passage of time becomes less significant'" to the question of whether information is stale. United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents, 307 F.3d 137, 148 (3d Cir. 2002) (quoting United States v. Tehfe, 722 F.2d 1114, 1119 (3d Cir. 1983)). In that case, the panel determined that information for probable cause was not stale when it was eleven months old. Id. While Agent Endy's affidavit does contain facts looking back several years to contextualize the alleged years-long conspiracy, many if not most of the facts alleged to link the residences and automobile to that conspiracy concern incidents within six months of the issuance of the warrant. The affidavit clearly outlined reliable facts that support a finding of probable cause that evidence of illegal activities would be found in the places to be searched. See Gates, 462 U.S. at 238.

Moreover, even if the Court did find probable cause lacking, the Court finds that the executing officers would still have been entitled to rely, in good faith, on the signed search warrant. To this point Defendant argues that the warrant was "so lacking in the indicia of probable cause as to render official belief in its existence unreasonable." (Doc. No.467 at 8.) Given the Court's finding that probable cause did exist and that Magistrate Judge Carlson had a sufficient basis for finding probable cause, the Court also finds that the officers could have reasonably relied on the search warrant. See United States v. Leon, 468 U.S. 897, 926 (1984)

(applying good faith exception where the "warrant was clearly supported by much more than a 'bare bones' affidavit").

In sum, the Court finds that Agent Endy's affidavit provided a sufficient basis for Magistrate Judge Carlson to conclude that probable cause existed to search the three residences and the 2014 Chevrolet Impala. In the alternative, the Court finds that the executing officers could have reasonably relied on the signed affidavit, so the evidence gleaned from those four searches will not be suppressed.[2]

### B. 2010 search of Tanya Rubio's Chevrolet Tahoe

The Government has argued that Defendant failed to show that he had a reasonable expectation of privacy in Tanya Rubio's Chevrolet Tahoe, so he lacks standing to challenge the search. At the hearing, Defendant made the summary statement that he does possess standing while offering no evidence to that effect.

In order to raise a Fourth Amendment challenge to a search, an individual must have had an "objectively reasonable expectation of privacy" in the place or thing that was searched, because otherwise that individual lacks standing to raise a challenge. See United States v. Correa, 653 F.3d 187, 190 (3d Cir. 2011). Defendant bears the burden of demonstrating that he had a reasonable expectation of privacy in the Chevrolet Tahoe. Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978). A "reasonable or legitimate expectation of privacy must have 'a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" United States v. Kennedy, 638

---

[2] The Court does not consider whether Defendant possesses Fourth Amendment standing to challenge the 2014 searches.

13

F.3d 159, 163-64 (3d Cir. 2011) (quoting Minnesota v. Carter, 525 U.S. 83, 88 (1998)).

In the present case, the Court finds that Defendant has not carried his burden. The uncontroverted facts contained in the state affidavit of probable cause establish that Tanya Rubio, not Defendant, owned the Chevrolet Tahoe in question. There is no indication from any of the papers that Defendant lawfully possessed or controlled the car at the time that it was impounded. The conclusion supported by the affidavit and the parties' representations is that the car was parked overnight when it was impounded. While one can imagine a set of facts that would impart a reasonable expectation of privacy to the driver of another individual's car, Defendant has not produced evidence that would permit the Court to make a finding of standing. Indeed, ample jurisprudence suggests that individuals lack a reasonable expectation of privacy in cars that they are not lawfully possessing or controlling and that they do not own. See United States v. Drummond, 2010 WL 481105 at *2 n.6 (M.D. Pa. Feb. 4, 2010) (collecting cases). Because Defendant bears the burden of showing lawful possession or an interest in the car upon which a reasonable expectation of privacy may be founded, the Court finds that Defendant lacked such a reasonable expectation of privacy and consequently lacks standing to challenge the search.[3]

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion to suppress evidence. An order consistent with this memorandum follows.

---

[3] In passing, the Court observes that if Defendant had shown a reasonable expectation of privacy, the Government would have needed to establish probable cause to impound the car initially, because that act effected a Fourth Amendment seizure. A post hoc warrant based in part on post-seizure evidence (i.e., the drug dog) could not have justified the seizure if it was invalid from the start. See Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 221 (1968).